UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CARRINGTON MORTGAGE SERVICES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SILVERADO PLACE HOMEOWNERS' ASSOCIATION; SATICOY BAY LLC SERIES 10384 MIDSEASON MIST; DOE INDIVIDUALS I-X, inclusive, and ROE CORPORATIONS I-X, inclusive,<br><br>Defendants. | Case No. 2:17-cv-01311-RFB-BNW<br><br>**ORDER**<br><br>**Findings of Fact and Conclusions of Law After Court Trial** |
| SATICOY BAY LLC SERIES 10384 MIDSEASON MIST,<br><br>Counter Claimant,<br><br>v.<br><br>CARRINGTON MORTGAGE SERVICES, LLC,<br><br>Counter Defendant. | |

**I.      INTRODUCTION**

This case concerns the nonjudicial foreclosure sale of real property located at 10384 Midseason Mist Street, Las Vegas, Nevada (the "Property") under Nevada Revised Statute ("NRS") Chapter 116. Plaintiff-Counter Defendant Carrington Mortgage Services, LLC ("Plaintiff" or "Carrington") alleges that its deed of trust survived Silverado Place Homeowners' Association (the "HOA") sale of the Property, and that Defendant-Counter Claimant Saticoy Bay LLC Series 10384 Midseason Mist ("Saticoy Bay") purchased the Property subject to the deed of

trust.

The Court held a bench trial in this case on June 28, 2023. The Court now rules in favor of Saticoy Bay and against Carrington based on the following findings of fact and conclusions of law.

## II. PROCEDURAL HISTORY

Plaintiff sued Defendants on May 9, 2017.[1] ECF No. 1. Plaintiff alleges four causes of action: (1) Quiet Title/Declaratory Judgment against all Defendants, (2) Breach of NRS 116.1113 against the HOA, (3) Wrongful Foreclosure against the HOA, and (4) Injunctive Relief against Saticoy Bay. Id. On October 6, 2017, the Court entered a scheduling order. ECF No. 17. On October 27, 2017, a Clerk's Default was entered as to the HOA. ECF No. 23. Discovery closed on December 26, 2017. ECF No. 17.

On March 30, 2019, the Court granted in part and denied in part Saticoy Bay's Motion to Dismiss and denied both parties' cross motions for summary judgment. ECF No. 52. As to the Motion to Dismiss, the Court concluded that it (1) had equity jurisdiction in this case, (2) (a) Carrington was not estopped from bringing any of its claims, (b) its quiet title claim, if based on lack of actual notice of the sale, failed as a matter of law, (c) its allegation that the sale was commercially unreasonable failed as a matter of law, and (d) its argument that NRS Chapter 116 is facially unconstitutional failed as a matter of law. Id. Separately, the Court denied the parties' Motions for Summary Judgment. Id. First, it found material fact issues existed as to whether Carrington's predecessor in interest, Bank of America, N.A. ("BANA"), tendered and thus extinguished the HOA's superpriority lien. Id. The Court found whether BANA's letter, offering to pay the amount of the superpriority lien in addition to inquiring what the amount was, constituted tender remained a disputed material fact. Id. Second, to the extent BANA may have tendered, it found that a genuine issue remained as to whether Saticoy Bay was a bona fide purchaser of the Property. Id. Facts disputes, it determined, existed as to whether Saticoy Bay engaged in diligent inquiry that revealed tender and the resultant extinguishment of Silverado's

---

[1] Plaintiffs sued additional defendants, which were dismissed from this action. See ECF Nos. 1, 24.

- 2 -

superpriority lien. Id.

The parties filed the relevant joint pretrial order on September 14, 2021. ECF No. 78. On November 28, 2022, the parties filed a Joint Motion for a trial without a jury, ECF No. 85, which the Court granted on April 21, 2023, see ECF No. 86. The parties then filed trial related documents. See ECF Nos. 92, 93, 101, 102, 103, 104, 105, 106.

The Court then held a one day bench trial on June 28, 2023. On February 29, 2024, the Plaintiff submitted a Motion for Judicial Notice. ECF No. 108.

This Order follows.

### III.   JURISDICTION AND VENUE

This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy exceeds $75,000.  Venue is proper because the Property at issue in this matter sits within Clark County, Nevada.

### IV.   LEGAL STANDARD

Federal Rule of Civil Procedure 52(a)(1) requires the Court to "find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1).  The court must make findings sufficient to indicate the factual basis for its ultimate conclusion. Kelley v. Everglades Drainage District, 319 U.S. 415, 422 (1943).  The findings must be "explicit enough to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision." United States v. Alpine Land & Reservoir Co., 697 F.2d 851, 856 (9th Cir.), cert. denied, 464 U.S. 863 (1983) (citations omitted).

### V.   FINDINGS OF FACT

The Court makes the following factual findings from the bench trial. Anthony J. Spradlin purchased the Property, located within the HOA. Spradlin financed ownership of the Property by way of a loan in the amount of $114,305.00 evidenced by a note and secured by a senior Deed of Trust recorded March 3, 2009 (the "senior Deed of Trust"). The senior Deed of Trust was assigned

to BANA, as trustee, through an assignment of deed of trust executed on May 30, 2012, and recorded on June 1, 2012. The senior Deed of Trust was then assigned to Carrington through an assignment of deed of trust executed on September 21, 2015, and recorded on September 24, 2015.

From 2012 to 2014, the HOA began, and ultimately completed, foreclosure proceedings on the Property:

On June 27, 2012, the HOA—through its collection agent, Leach Johnson Song & Gruchow ("LJSG")—recorded a notice of delinquent assessment lien (the "Notice"). That same day, LJSG sent Spradlin a copy of the Notice by certified mail. On August 7, 2012, the HOA, through LJSG, recorded a notice of default and election to sell real property to satisfy notice of delinquent assessment lien (the "Notice of Default").

On August 17, 2012, the HOA, through LJSG, sent BANA—who had an interest in the Property—the Notice of Default by certified mail.

Counsel for BANA, Rock Jung, Esq., of Miles Bauer Bergstrom & Winters, LLP ("Miles Bauer"), sent John Leach, Esq., of LJSG, a September 10, 2012, dated letter. The letter explained that BANA was offering to pay the nine months of common assessments pre-dating the Notice of Default (i.e., the superpriority portion of the HOA's lien), but that the nine month sum was unknown. Jung requested presentation of adequate proof of the nine month sum and asked that the HOA refrain from taking further action to enforce the lien until the matter was resolved.

On September 27, 2012, Leach responded that the nine month superpriority is triggered by the foreclosure sale and survives foreclosure. He denied any legal obligation to communicate the amount of the nine month sum and would not provide the amount of the lien until the entire balance due and owing was received. The letter also stated: "If your client wants to make a partial payment to the Association, then the Association will apply it to the owner's past due balance." Additionally, the letter offered to provide BANA with the Property's account information if BANA provided written consent from the homeowner.

At the time of this letter exchange, LJSG did not have a policy of categorical rejection of tender payments that either Miles Bauer or BANA were subjected to in relation to the Property. Rather, there were individualized decisions made with respect to rejecting offers to tender from

Miles Bauer, including notifying its clients when Miles Bauer did offer any amounts to pay the lien. Moreover, if LJSG received a check, LJSG would hold onto it until it spoke with the HOA to decide about accepting it or engaged in future communications from BANA. Neither Jung nor Leach recalled their specific interactions with respect to the Property.

Neither Miles Bauer nor BANA took any additional action regarding the Property, including sending any amount to satisfy all or a portion of the superpriority portion of the HOA lien, seeking the Property owner's consent to obtain the Property's account information, or ascertaining information from other sources to help calculate the superpriority portion due.

On November 21, 2013, the HOA, through LJSG, recorded a notice of trustee's sale. The trustee's sale was scheduled for January 30, 2014. The HOA sold the Property at auction on September 15, 2014. Saticoy Bay purchased the Property at the foreclosure sale for $37,600.00. A foreclosure deed was recorded on September 25, 2014.

## VI.   CONCLUSIONS OF LAW

The Court addresses the issue of tender and equity, in turn.

### A.   Tender and Excuse of Tender

#### 1.   Applicable Law

Chapter 116 of the Nevada Revised Statutes allows a homeowner's association with a superpriority lien to extinguish a deed of trust. Nev. Rev. Stat. § 116.3116(2). A deed holder may preserve its interest, however, "by tendering the superpriority portion of the HOA's lien before the foreclosure sale is held." 7510 Perla Del Mar Ave Tr. v. Bank of Am., N.A., 458 P.3d 348, 348 (Nev. 2020) (en banc).[2] "A tender is an offer to perform a condition or obligation, coupled with the present ability of immediate performance." Id. at 350. Yet, a "promise to make a payment at a later date or once a certain condition has been satisfied cannot constitute a valid tender." Id. Tender is excused, however, if "evidence shows that the party entitled to payment had a known policy of rejecting such payments." Id. at 349 (emphasis added).

---

[2] "The full superpriority amount consists of nine months of unpaid HOA dues and any unpaid charges for maintenance and nuisance abatement." Bank of Am., N.A. v. Arlington W. Twilight Homeowners Ass'n, 920 F.3d 620, 623 (9th Cir. 2019).

*2. Discussion*

The Court finds that Plaintiff did not attempt to tender the superpriority lien to preserve its interest before the 2014 foreclosure sale of the Property. This is because Miles Bauer's September 10, 2012, letter to LJSG was insufficient to constitute a valid tender. The letter stated in relevant part that "[i]t is unclear based upon the information known to date what amount the nine months of common assessments pre-dating the [Notice of Default] actually are. That amount whatever it is, is the amount BANA should be required to rightfully pay to fully discharge its obligations to the HOA per NRS 116.3102 and my client hereby offers to pay that sum upon presentation of adequate proof of the same by the HOA." Yet, an offer "to pay the yet-to-be-determined superpriority amount [is] not sufficient to constitute a valid tender." Bank of Am., N.A. v. Doreen Properties, LLC, 465 P.3d 1184 (Nev. 2020) (unpublished) (citing Perla, 458 P.3d at 349).

What is more, Plaintiff fails to establish that tender would be excused as futile because LJSG "had a known policy of rejecting such payments." Perla, 458 P.3d at 349. LJSG's September 27, 2012, letter, which was a form letter, disagreed with Miles Bauer's legal "conclusions regarding the statutory super priority portion of the [HOA's] assessment lien," including when the nine month superpriority is triggered and the superpriority amount that would be owed to the HOA in the event lien is triggered. Yet, the letter provided the following: "Based on the foregoing the [HOA] rejects the position taken by [BANA]. If your client wants to make partial payment to the [HOA] then the Association will apply it to the owner's past due balance. However, the [HOA] cannot and will not release its lien until the entire balance due and owing is received or BAC completes its own foreclosure sale and the purchaser at said sale pays the [HOA] the full super priority portion of the Associations claim."

Plaintiff argues that engaging with LJSG after the September 27, 2012, letter would have been futile based on LJSG's known rejection policy. Jung testified that, around 2012, whenever he would reach out to LJSG requesting to pay the superpriority lien amount, like he did in this case, LJSG's policy was to reject such request, contending: first, the superpriority lien amount is more than the deed holder thinks it is, and two, it is premature until the deed holder can show, by providing a copy of the trustee's deed upon sale, that it foreclosed on its senior Deed of Trust lien.

1   At bottom, Jung testified any attempt to tender would have been rejected because there was a
2   fundamental disagreement about how much the superiority amount was due.
3         The Court rejects Plaintiff's reliance on LJSG's September 27 letter and any so-called 2013
4   policy change as evidence of a known rejection policy. Leach credibly testified that, as the HOA's
5   agent, there was no rejection policy that Miles Bauer and BANA were subjected to in 2012
6   regarding the Property. Rather, there were individualized decisions made with respect to rejecting
7   offers to tender from Miles Bauer, including notifying its clients when Miles Bauer did offer any
8   amounts to pay the lien. Leach also testified that, if LJSG received a check, LJSG would hold onto
9   it until it spoke with the HOA to decide about accepting it or engaged in future communications
10  from BANA. The Court further finds that Jung's recollection of the timing as to when LJSG
11  changed its policy and would start accepting lien payments was ambiguous such that any alleged
12  policy of rejection could not be established prior to the events at issue in this case. Additionally,
13  neither Leach or Jung recalled any specific interactions regarding the Property in this case. Based
14  on these facts, the Court does not find that this case involved a situation where any attempt to
15  tender was subjected to automatic rejection based upon a known policy at the relevant time period.
16  See, e.g., Perla, 458 P.3d at 351 (concluding that, because evidence at trial established that "it was
17  NAS's business policy to have its receptionist reject any check for less than the full lien amount,"
18  and that "Miles Bauer[, BANA's counsel,] and [] [BANA] had knowledge of this business
19  practice," "substantial evidence support[ed] the district court's finding that even if Miles Bauer
20  had tendered a check for the superpriority amount, it would have been rejected."). The Court does
21  not find, based on the record before it, that BANA would be subject to a categorical rejection
22  policy after the 2013 policy change either.
23        Therefore, the Court does not find that tender was excused as futile.

### B. Inadequate Price, Fraud, Unfairness, or Oppression

25  Alternatively, Plaintiff presses the argument that, even if tender was not excused, equity
26  still preserves its senior Deed of Trust because the sale price was inadequate and the foreclosure
27  involved fraud or unfairness. According to Plaintiff, the Property at the date of the foreclosure sale
28  had a fair market value of $142,000.00, and Saticoy Bay purchased it for $37,600.00—this was

inadequate. Additionally, Plaintiff points to Saticoy Bay's foreclosure sale conduct, including being on inquiry notice of BANA's senior Deed of Trust, its effort to tender, the taking the Property without warranties, and the value of the Property, as other bases for the Court to use its equity powers. The Court concludes that Plaintiff's alternative argument lacks merit.

### 1. Applicable Law

To establish that it is entitled to the equitable relief of an order setting aside a foreclosure sale, a party must make "a showing of grossly inadequate price plus fraud, unfairness, or oppression." Shadow Wood HOA v. N.Y. Cmty. Bancorp., 366 P.3d 1105, 1110 (Nev. 2016). A showing of inadequate price "is not enough to set aside [an HOA foreclosure] sale; there must also be a showing of fraud, unfairness, or oppression." Id. at 1112. In considering whether equity supports setting aside the foreclosure sale in question, a court must consider factors bearing on the equities, including party action, or inaction, in seeking to set aside the sale. Id. at 1114 (finding "courts must consider the entirety of the circumstances that bear upon the equities").

### 2. Discussion

Here, the Court does not find that factors bearing on the equities weigh in favor of setting aside the HOA foreclosure sale. As a threshold matter, the Court does find that the sale price in this case was substantially below the fair market value stipulated to by the parties. However, the inquiry does not end here as there must also be fraud, unfairness or oppression associated with the sale. Id. At 1112.

The Court does not find that fraud, unfairness or oppression has been established on this record. The Court does not find that any of the entities on the seller side of the foreclose sale engaged in fraud or deception or improper conduct. Moreover, the Court must also consider the conduct of all parties for its equity jurisdiction. To this end, the Court finds that Miles Bauer and BANA did nothing else to preserve their interest in the Property after receiving LJSG's letter. Plaintiff asserts that it could do nothing more because LJSG obstructed its attempts to tender by refusing to provide any information. The Court disagrees. Certainly, the September 27, 2012, letter from LJSG demonstrated that the parties disagreed about the superpriority lien amount. But that disagreement, as discussed above, did not mean the end of the road for Plaintiff's attempts to

preserve its interest in the Property. Instead, Plaintiff sat on its hands for three years before filing this instant action. Ultimately, the Court does not find the parties' conduct taken together weighs in favor of setting aside the 2014 foreclosure of the Property. See Shadow Wood, 366 P.3d at 1114.[3]

Consequently, the Court finds that, because Plaintiff has failed to raise any cognizable equitable challenges to the foreclosure sale, the bona fide purchaser doctrine is not at issue in this case. See Bank of New York Mellon v. Ruddell, 380 F. Supp. 3d 1096, 1101 (D. Nev. 2019).

Accordingly, the Court finds in favor of Saticoy Bay.

**VII.   MOTION FOR JUDICIAL NOTICE**

Plaintiff requests that this Court take judicial notice of the judgment in a 2023 Nevada state court case, LN Management LLC Series 1936 Via Firenze v. Clayton A. Wight et al., identified as case number A-14-696232-C. Plaintiff asserts that the Court should enter judgment on behalf of Carrington on the basis of issue preclusion.

A court may take judicial notice of court filings and other matters of public record. See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 750 n.6 (9th Cir. 2006); Fed. R. Evid. 201 (permitting judicial notice for adjudicative facts that can be accurately and readily determined form sources whose accuracy cannot reasonably be questioned). In doing so, the Court does not consider any disputed matters contained within those court filings, only their existence and any stated reasoning of the courts. Lee v. City of L.A., 250 F.3d 668, 689-90 (9th Cir. 2001).

Issue preclusion applies when (1) the issue decided in the prior litigation is identical to the issue presented in the current action; (2) the initial ruling was final and on the merits; (3) the party against whom the judgment is asserted was a party or in privity with a party in the prior litigation; and (4) the issue was actually and necessarily litigated. In re Sandoval, 232 P.3d 422, 423 (Nev. 2010).

The Court first addresses whether the parties are in privity. Issue preclusion can only be

---

[3] The Court notes that any price paid for the Property would have to reflect the risk associated with purchasing a property subject to litigation during this period. See, e.g., JPMorgan Chase Bank, N.A. v. SFR Invs. Pool 1, LLC, 200 F. Supp. 3d 1141, 1174-75 (D. Nev. 2016). Indeed, this instant litigation itself is an indication of the risk and expense associated with the Property. Thus, the record strong supports the inference that the entity that bought the Property for the low price did so knowing that there was going to be litigation concerning it.

- 9 -

used against a party whose due process rights have been met by virtue of that party having been a party or in privity with a party in the prior litigation. Bower v. Harrah's Laughlin, Inc., 215 P.3d 709, 718 (2009) (citing Paradise Palms v. Paradise Homes, 505 P.2d 596, 598-99 (1973)). The Nevada Supreme Court adopts the Restatement (Second) of Judgments' examples of privity. See Alcantar v. Wal-Mart Stores, Inc., 321 P.3d 912, 917-18 (2014). To be in privity, the entity must have "acquired an interest in the subject matter affected by the judgment through … one of the parties, as by inheritance, succession, or purchase." Id. (citing Restatement (Second) of Judgments § 41(1) (1982) (enumerating representatives to include: trustees of an interest to which the person is a beneficiary, someone who the person invested with authority to represent him, a fiduciary to the person, an official or agency legally authorized to represent the person's interests, and a class representative in a certified class action)).

In the Via Firenze case, LN Management LLC Series 1936 Via Firenze ("LN Management") filed suit against Citibank, N.A., among other defendants. Citibank assigned the loan at issue to Pennymac, and Pennymac was substituted into the case. The court found that tender was futile and excused and entered judgment in favor of Pennymac. Plaintiff asserts that Iyad Haddad "is behind LN Management" as he owned the property subject through a trust and managed the litigation for the trust. Mr. Haddad had similar control over Saticoy Bay as he managed the affairs of the company and was a bona fide purchaser of the property. Plaintiff maintains that the relationship between Mr. Haddad, LN Management, and Saticoy Bay provide sufficient privity to apply issue preclusion.

The Court disagrees. Mr. Haddad asserts via declaration that he is the sole manager for Saticoy Bay, but one of two managers for LN Management. While Mr. Haddad is involved in the management of both companies, Plaintiff provides no evidence of a legal relationship between the separate and distinct corporations. See Bower v. Harrah's Luaghlin, Inc., 215 P.3d 709, 723 (2009). Saticoy Bay has no interest in the property at issue in the state court case and has not acquired an interest in the subject matter affected by that judgment. See Alcantar, 321 P.3d at 917-18. Hence, there is no privity between the parties, and, therefore, no issue preclusion.

VIII. **CONCLUSION**

**THE COURT FINDS AND DECLARES** that September 15, 2014, foreclosure sale extinguished Plaintiff-Counter Defendant Carrington Mortgage Services, LLC's senior Deed of Trust.

**IT IS FURTHER ORDERED** that judgment is entered in favor of Defendant-Counter Claimant Saticoy Bay LLC Series 10384 Midseason Mist on Counter Claim for declaratory relief and quiet title against Plaintiff-Counter Defendant Carrington Mortgage Services, LLC's senior Deed of Trust, and dismiss any remaining claims.

**IT IS FURTHER ORDER**ED that the Motion for Judicial Notice (ECF No. 108) is **GRANTED in part and DENIED in part**. The Court takes judicial notice of the state judgment, but declines to apply issue preclusion.

**IT IS FURTHER ORDERED** that the Clerk of Court shall close this case.

DATED: September 30, 2024

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**